1  NOEL S. COHEN (SBN: 219645)
   ncohen@polsinelli.com
2  POLSINELLI LLP
   2049 Century Park East, Suite 2900
3  Los Angeles, CA 90067
   Telephone:   (310) 556-1801
4  Facsimile:   (310) 556-1802

5  Attorneys for Third-Party Defendants
   FUJIFILM HUNT SMART SURFACES, LLC;
6  FUJIFILM HUNT CHEMICALS U.S.A., INC.;
   FUJIFILM HOLDINGS AMERICA CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| MATSON NAVIGATION COMPANY, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE SHERWIN-WILLIAMS COMPANY<br><br>Defendant. | Case No. 3:17-cv-00081 EDL<br><br>*(Assigned to the Honorable Elizabeth D. Laporte)*<br><br>**FUJIFILM HUNT SMART SURFACES, LLC, FUJIFILM HUNT CHEMICALS U.S.A., INC. AND FUJIFILM HOLDINGS AMERICA CORPORATIONS' REPLY BRIEF ISO MOTION TO DISMISS** |
| THE SHERWIN-WILLIAMS COMPANY<br><br>Third-Party Plaintiff,<br><br>v.<br><br>FUJIFILM HUNT SMART SURFACES, LLC; FUJIFILM HUNT CHEMICALS U.S.A., INC.; FUJIFILM HOLDINGS AMERICA CORPORATION,<br><br>Third-Party Defendant. | [Filed Concurrently with Declarations of Patrick J. Rohan and Noel S. Cohen] |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................. 3

    A. The Third-Party Complaint Should Be Dismissed for Lack of Personal Jurisdiction ................................................................................. 3

        1. FHSM's Alleged Dealings With Matson Do Not Confer Jurisdiction. ................................................................................. 3

        2. FHSM's Alleged Indemnity Obligation Does Not Support Jurisdiction. ................................................................................. 5

        3. FHSM's Alleged Breach of Its Indemnity Obligations Has No Relationship to California. ............................................... 6

        4. The Insurance Cases Cited by S-W Do Not Apply. ............................ 7

        5. The Controversy Does Not Arise from FHSM's Contacts with the Forum. ................................................................................. 9

        6. Exercise of Jurisdiction Would be Unfair and Unreasonable. ................................................................................. 11

        7. The Court Lacks Jurisdiction Over HLUS. ...................................... 11

    B. The Third-Party Complaint Fails to State a Claim Against HLUS. .............. 11

III. CONCLUSION ....................................................................................................... 13

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abokasem v. Royal Indian Raj Int'l Corp.*,
 2011 WL 635222 (N.D. Cal. Feb. 11, 2011) ................................................................. 5

*Am. Induction Techs., Inc. v. KBK, Inc.*,
 2012 WL 12888112 (C.D. Cal. April 17, 2012) ........................................................... 9

*The Am. Ins. Co. v. R&Q Reinsurance Co.*,
 2016 WL 5930589 (N.D. Cal. Oct. 12, 2016) ........................................................... 6, 7

*Arizona School Risk Retention Trust, Inc. v. NMTC, Inc.*,
 169 F.Supp.3d 931 (D. Ariz. 2016) .............................................................................. 5

*Boschetto v. Hansing*,
 539 F.3d 1011 (9th Cir. 2008) ..................................................................................... 3

*Bristol-Myers Squibb Co. v. Superior Court*,
 137 S. Ct. 1773 (2017) .................................................................................. 3, 4, 5, 10

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ..................................................................................................... 3

*Core-Vent Corp. v. Nobel Indus. AB*,
 11 F.3d 1482 (9th Cir. 1993) ..................................................................................... 11

*Cottle v. Western Skyways Inc.*,
 2017 WL 1383277 (E.D. Cal. April 17, 2017) ......................................................... 3, 6

*Daimler AG v. Bauman*,
 134 S. Ct. 746 (2014) ............................................................................................ 2, 11

*Doe v. Unocal Corp.*,
 248 F.3d 915 (9th Cir. 2001) ....................................................................................... 9

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,
 907 F.2d 911 (9th Cir. 1990) ....................................................................... 1, 5, 7, 8, 10

*Flintkote Co. v. Gen. Accident Ass. Co. of Canada*,
 2004 WL 1977220 (N.D. Cal. Sept. 7, 2004) ............................................................ 8, 9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 131 S. Ct. 2846 (2011) .................................................................................... 4, 5, 10

| | |
|---|---|
| *Hawthorne v. Mid-Continent Cas. Co.*, 2017 WL 1233116 (W.D. Wa. April 4, 2017) | 8 |
| *Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474 (9th Cir. 1986) | 9 |
| *Holland Am. Line Inc., v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007) | 8 |
| *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244 (9th Cir. 1984) | 10 |
| *J. McIntyre Mach.. Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) (opinion of Breyer, J.) | 3, 4 |
| *Key Tronic Corp. v. Smart Techs. ULC*, 2016 WL 7104252 (E.D. Wash., Dec. 5, 2016) | 5 |
| *OMI Holdings Inc. v. Royal Insurance of Canada*, 149 F.3d 1086 (10th Cir. 1998) | 11 |
| *Peterson v. Kennedy*, 771 F.2d 1244 (9th Cir. 1985) | 3 |
| *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) | 3, 5, 6 |
| *Scott v. Breeland*, 792 F.2d 925 (9th Cir. 1986) | 10 |
| *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) | 3 |
| *Sibley v. Superior Court*, 16 Cal. 3d 442 (1976) (*en banc*) | 7 |
| *Walden v. Fiore*, 134 S. Ct. 1115 (2014) | 6, 7, 10 |
| *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980) | 4, 7, 8, 10 |

**Statutes**

| | |
|---|---|
| Fed. R. Civ. P. 12(b)(6) | 2, 11 |

## I. INTRODUCTION

S-W[1] does not address, and therefore concedes, that the Court lacks general jurisdiction over the FUJIFILM Parties. S-W asserts instead that the Court may exercise specific jurisdiction over FHSM (and over FHUS solely as FHSM's successor) on two grounds. First, S-W contends that FHSM "was heavily involved in all aspects of the underlying transaction with Matson," including (1) communications with Matson via email from FHSM's offices in New Jersey, (2) shipment of the surface and tie coatings to S-W's San Diego store, which S-W then resold and delivered to Matson for the painting of the Vessel *in China*, and (3) approximately one month *after* the coatings had allegedly failed, attendance at a brief visual inspection of the hull at a marina in Long Beach, California. S-W Mem. at 1, 3-5 and 12. Alternatively, relying exclusively on cases involving *insurance carriers*, S-W contends that FHSM's alleged agreement under the FHSM Supply Agreement to defend and indemnify S-W "without geographical restriction" constitutes purposeful availment of the privilege of conducting activities in California. *Id.* at 1, 9-11.

Neither contention has merit. As demonstrated in movants' Opening Mem., neither the use of the mails, telephone or other means of interstate communication, nor the shipment of goods into the state, constitutes purposeful availment. In addition, FHSM's sole visit to the forum, *after* the allegedly defective paint job in China, is not only too attenuated to confer jurisdiction, but it is well settled that "[o]nly contacts occurring *prior to the event causing the litigation* may be considered" in assessing specific jurisdiction. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) (emphasis added).

S-W's alternative reliance on the indemnification provision of the FHSM Supply Agreement fares no better because: (i) neither the terms of FHSM Supply Agreement itself nor FHSM's alleged refusal to indemnify S-W bear any relationship with California[2]; (ii) FHSM is

---

[1] Defined terms herein have the meanings ascribed to them in movants' opening Memorandum of Points and Authorities (the "Opening Mem.").

[2] As discussed below, S-W, by letter dated March 1, 2017, directed its demand for indemnification to FHSM at its offices in *New Jersey* and to HLUS at its offices in *New York*, and the FUJIFILM Parties, *through counsel in New York*, responded to S-W's demand by letter dated

REPLY IN SUPPORT OF MOTION TO DISMISS

60008871.1

1   not an insurer but a *product manufacturer*, a critical distinction made in the case law cited by S-W; and (iii) even if the insurance cases applied (and they do not), the event giving rise to the litigation *must also take place in the forum* and, here, it is undisputed that the allegedly defective paint job took place in *China*.

S-W's contention that FHSM should reasonably have anticipated being hauled before a California court based solely on an indemnity clause "without geographical restriction" is also belied by the separate insurance terms of the S-W Supply Agreement, pursuant to which FHSM agreed to procure and maintain comprehensive general liability insurance and to name S-W as an additional insured thereunder. *See* Kearney Decl., Ex. A, § 15. FHSM not only procured such insurance, but its carrier is in fact funding S-W's defense in this action. *See* Rohan Reply Decl., Exs. C and D.

Regarding jurisdiction over HLUS, FHSM's and FHUS' ultimate U.S. parent corporation, S-W, suggests that jurisdiction may be founded on agency theory, with FHSM's alleged in-state contacts attributed to its out-of-state parent. But this is a non-starter, both because FHSM's own forum contacts are insufficient and because the Supreme Court *expressly rejected* the Ninth Circuit's agency theory of jurisdiction in *Daimler AG v. Bauman,* 134 S. Ct. 746, 759-60 (2014).

Finally, regarding dismissal of S-W's claims against HLUS pursuant to Fed. R. Civ. P. 12(b)(6), S-W concedes that the only party with whom it contracted was *FHSM*, but suggests that HLUS may nonetheless be held liable for *FHSM's* alleged indemnity obligations on an "agency theory" because: (i) the notice provision of the FHSM Supply Agreement included HLUS' Law Department as a notice copy recipient; and (ii) a preprinted footer in certain FHSM emails sent to S-W *after* the execution of the FHSM Supply Agreement "attempted to incorporate" certain additional HLUS terms and conditions. S-W cites no authority for the first proposition (and there is none), and its second contention fails because (i) S-W does not allege that these additional terms *were incorporated* into the FHSM Supply Agreement; (ii) the latter provides that it may be amended only by a writing signed by S-W; and (iii) these additional terms and conditions, on

---

March 13, 2017. See Exhibits A and B to the Reply Declaration of Patrick J. Rohan (the "Rohan Reply Decl.").

their face, do not purport to bind HLUS to anything, much less to FHSM's indemnity obligations.

## II. ARGUMENT

### A. The Third-Party Complaint Should be Dismissed for Lack of Personal Jurisdiction.

#### 1. FHSM's Alleged Dealings with Matson Do Not Confer Jurisdiction.

While S-W asserts that FHSM was "heavily involved in the underlying transaction with Matson," even if FHSM had contracted *directly* with Matson (although it did not), these dealings are insufficient to confer jurisdiction. Under the purposeful availment test, "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). Instead, "there must be actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original)); *see also Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1783 (2017) (activities of in-state distributor did not support jurisdiction over out-of-state manufacturer, especially where "it is not alleged that [the manufacturer] engaged in relevant acts together with [the distributor] in California").

The fact that FHSM may have sent emails or other documents to Matson in California is likewise insufficient, since the "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (citations and internal quotation marks omitted); *see Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). Nor does a defendant "purposefully avail itself of a forum simply by delivering a product into the state." *Cottle v. Western Skyways Inc.,* 2017 WL 1383277, *4-6 (E.D. Cal. April 17, 2017); *Boschetto,* 539 F.3d at 1017.

Indeed, in rejecting the "stream-of-commerce" theory of jurisdiction, the Supreme Court has emphasized that "a single sale of a product in a State does not constitute an adequate basis for jurisdiction over an out-of-state defendant." *J. McIntyre Mach.. Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (opinion of Breyer, J.). To the contrary, the transmission of goods will permit the

REPLY IN SUPPORT OF MOTION TO DISMISS
60008871.1

exercise of jurisdiction only where the defendant has engaged in *substantial* sales activities that "can be said to have targeted the forum" and where those activities have resulted in harm *in the forum itself*. *Id.* at 2788. As explained in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011):

> [W]here 'the sale of a product . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve . . . the market for its products in [several] States, it is not unreasonable to subject it to suit in one of those States *if its allegedly defective merchandise has there been the source of injury to its owner or others.*

*Id.* at 2855 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980) (emphasis added in *Goodyear*). *Accord Bristol-Myers Squibb*, 137 S. Ct. at 1782 (no specific jurisdiction over out-of-state manufacturer where the plaintiffs did not claim to have suffered harm in California and the conduct giving rise to their claims occurred elsewhere).

Here, FHSM plainly did not "target" its sales at California. FHSM never had offices, employees or sales representatives in California, never advertised or registered to do business here, and – apart from the Matson Coatings at issue – had only *de minimus* sales in California. Kearney Decl., ¶¶ 18-20.[3] Nor did the terms the FHSM Supply Agreement contemplate or require any performance here. To the contrary, the agreement required S-W to submit orders to FHSM's "office located in *Allendale, New Jersey*" and required FHSM to deliver the Products F.O.B. "its manufacturing facility in *Dayton, Tennessee."* Kearney Decl., Exh. A, §§ 3, 5 (emphasis supplied). S-W's order for the Matson Coatings itself was sent to and accepted by FHSM at its New Jersey office. Kearney Decl., ¶¶ 30-31. While FHSM, as an accommodation to S-W, may have shipped the coatings to San Diego, all parties clearly understood that the Matson Coatings were destined for China and that the Vessel was being painted at the Shipyard in China. *Id.*, ¶ 31; Third-Party Complaint, ¶¶ 10-12; First Amended Complaint, ¶¶ 6-9.

Just as importantly, it is undisputed that the event giving rise to this litigation – the

---

[3] In 2015 (its last year of operation), FHSM had no sales in California. In 2014, other than the Matson Coatings at issue, its sales totaled less than $2,000, and in 2012 and 2013 its California sales totaled $3,000 and $5,000, respectively. *Id.* at ¶ 20.

allegedly defective coating of the Vessel – did not take place in this forum, as required under *Goodyear* and *Bristol-Myers Squibb*, but in China.

Finally, FHSM's sole visit to the forum, approximately one month *after* the painting of the Vessel in China and the alleged failure of the coatings, to view the hull at a marina in Long Beach, is clearly too attenuated to create "a substantial connection with the forum state." *Picot*, 780 F.3d at 1212-1213 (defendant's two trips to California were insufficient to create a substantial connection where they were neither envisioned under the terms of the parties' contract nor "[held no] special place in [the defendant's] performance under the agreement as a whole.").

Just as importantly, in assessing specific jurisdiction, "[o]nly contacts occurring prior to the event causing the litigation may be considered." *Farmers*, 907 F.2d at 914 (9th Cir. 1990); *see also Key Tronic Corp. v. Smart Techs. ULC,* 2016 WL 7104252, *7 (E.D. Wash., Dec. 5, 2016) (defendant's two trips to the forum *after* it had allegedly supplied defective products and in an effort to resolve the parties' dispute were "not appropriate for consideration" of specific jurisdiction); *accord Abokasem v. Royal Indian Raj Int'l Corp.,* 2011 WL 635222, * 6 (N.D. Cal. Feb. 11, 2011); *Arizona School Risk Retention Trust, Inc. v. NMTC, Inc.*, 169 F.Supp.3d 931, 935 (D. Ariz. 2016). Here, as in *Key Tronic*, FHSM's sole visit to the forum occurred *after* the allegedly defective paint job in China and thus does not support jurisdiction.[4]

### 2. FHSM's Alleged Indemnity Obligation Does Not Support Jurisdiction.

S-W's alternative contention, that FHSM purposefully availed itself of the privilege of conducting business in California by virtue of the indemnity provision in the FHSM Supply Agreement, fails because: (i) neither the terms of FHSM Supply Agreement itself nor FHSM's alleged refusal to indemnify S-W bear any relationship with California; (ii) FHSM is not an insurer but a product manufacturer, a critical distinction raised in the case law; and (iii) even if the insurance cases applied (and they do not), the event giving rise to the litigation must also take place in the forum and, here, it is undisputed that the allegedly defective paint job took place in

---

[4] See Declaration of Noel S. Cohen.

China.

### 3. FHSM's Alleged Breach of Its Indemnity Obligations Has No Relationship to California.

As a threshold matter, neither the "indemnitor" (FHSM) nor the "indemnitee" under the FHSM Supply Agreement is a California resident,[5] the agreement was not negotiated in California (Kearney Decl. ¶ 22), and it is expressly governed by *Ohio* law. *Id.*, Ex. A, § 18(d). Moreover, while courts will examine the parties' written contract to determine whether its terms "required any aspect of performance to occur in California" (*Cottle*, 2017 WL 1383277, * 7; *Picot*, 780 F.3d at 1212), the FHSM Supply Agreement neither references California nor required any performance here. To the contrary, the FHSM Supply Agreement required S-W to submit orders to FHSM's "office located in *Allendale, New Jersey*" and required FHSM to deliver the Products F.O.B. "its manufacturing facility in *Dayton, Tennessee.*" Kearney Decl., Exh. A, §§ 3, 5 (emphasis supplied). The Matson order itself was sent to and accepted by FHSM at its New Jersey office. Kearney Decl., ¶ 31.

It is also undisputed that neither S-W's demand for indemnification nor FHSM's purported rejection of the same took place in California. Rather, by letter dated March 1, 2017 (Rohan Reply Decl. Ex. A), S-W directed its demand for indemnification to FHSM at its offices in *New Jersey* and to HLUS at its offices in *New York*, and the FUJIFILM Parties, through counsel in *New York*, responded to this demand by letter dated March 13, 2017. Rohan Reply Decl. Ex. B.

While Matson has sued *S-W* in California, and the latter has demanded that FHSM appear and defend it here, "it is the defendant's conduct that must form the necessary connection with the forum State" and "a defendant's relationship with a plaintiff or a third party, standing along, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (2014).

*The Am. Ins. Co. v. R&Q Reinsurance Co.,* 2016 WL 5930589 (N.D. Cal. Oct. 12, 2016),

---

[5] FHSM is a (former) *Delaware* company based in New Jersey, and S-W is an *Ohio* corporation based in Cleveland. Third-Party Complaint, ¶¶ 4, 6.

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

is instructive. There, the plaintiff insurer, which was headquartered in California, paid out millions of dollars in losses and demanded indemnity from – and later brought suit in California against – the defendant reinsurer, which was incorporated and headquartered in Pennsylvania. In holding that the court lacked specific jurisdiction over the defendant, the court noted that it was undisputed that the defendant's decision to reject Plaintiff's reinsurance claims was made at its Pennsylvania headquarters and that the underlying agreements themselves were negotiated in Illinois. *Id.* at *3. The court noted further that neither the fact that the plaintiff was a *California* indemnitee, nor the facts that the defendant had extensive telephone and email communications with the plaintiff *and* made trips to the forum to audit the plaintiff's claims, sufficed to establish jurisdiction, explaining that "the Supreme Court has consistently rejected efforts to establish specific jurisdiction purely through an out-of-state defendant's connections with an in-state plaintiff." *Id.* (*citing Walden*, 134 S. Ct. at 1122).

Here, S-W's attempt to base specific jurisdiction on the indemnity provision of the FHSM Supply Agreement is *even weaker*, since S-W is not a California indemnitee and the FHSM Supply Agreement itself bears no relationship to California. *See also Sibley v. Superior Court*, 16 Cal. 3d 442, 447-48 (1976) (*en banc*) (negotiation and execution of guaranty agreement out of state, by nonresident guarantor, in favor of California resident, insufficient to confer jurisdiction).

### 4. The Insurance Cases Cited by S-W Do Not Apply.

In *Farmers*, the case principally relied on by S-W, the court held that where an automobile liability *insurer* issued a policy with a nationwide scope of coverage *and* where its insureds were involved in an accident in the forum state, the insurer has purposefully availed itself of the privilege of conducting business there. *Farmers,* 907 F.2d at 913 (explaining that the insurer had purposefully availed itself of the forum because "[i]ts policy coverage extends into Montana and an insured event resulted in litigation there."). In so holding, the court was careful to distinguish the situation of a liability insurer, whose sole "product" is the defense and indemnity of claims, from a manufacturer or distributor, as follows:

> Unlike the automobile sellers in *World-Wide Volkswagen,* automobile liability insurers contract to indemnify and defend the insured for claims that will foreseeably result in

- 7 -
REPLY IN SUPPORT OF MOTION TO DISMISS

60008871.1

litigation in foreign states. . . . Thus litigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer. *Moreover, unlike a product seller or distributor, an insurer has the contractual ability to control the territory into which its "product" — the indemnification and defense of claims — will travel.*

*Id.* at 914 (emphasis supplied).

*Farmers* and its progeny are thus clearly inapplicable for two fundamental reasons. First and foremost, FHSM is not an insurer but a product manufacturer *with no ability to control the territory into which its products will travel*, especially where, as here, it had appointed independent resellers such as S-W. To permit the exercise of jurisdiction over FHSM wherever its products travelled would revive the discredited "stream-of-commerce" theory of jurisdiction which has been rejected repeatedly by the Supreme Court and Ninth Circuit. *See World-Wide Volkswagen*, 444 U.S. at 295-96 (explaining that "foreseeability alone has never been a sufficient benchmark for jurisdiction" and rejecting a regime where "every seller of chattels would in effect appoint the chattel his agent for service of process"); s*ee also Holland Am. Line Inc., v. Wartsila N. Am., Inc.,* 485 F.3d 450, 459 (9th Cir. 2007) ("placement of a product into a stream of commerce, without more, is not an act purposefully directed toward the forum").

Second, it is undisputed that the "insured event" – the allegedly defective coating of the Vessel – took place in China, and not in this forum. Thus, even if FHSM were an insurer, these cases simply would not apply. *See Hawthorne v. Mid-Continent Cas. Co.*, 2017 WL 1233116, *4 (W.D. Wa. April 4, 2017), explaining that under *Farmers* and its progeny:

[W]here an insurance agreement covers risk in all fifty states, an insured event occurs in one of those states, and *the suit for which the insured seeks the insurer's defense is filed in that same state,* the insurer purposefully avails itself of that state's forum by voluntarily assuming the obligation to appear and defend against suits arising from that insured event.

(Emphasis in original).[6]

---

[6] The additional insurance and indemnity cases cited by S-W are also clearly inapposite. In *Flintkote Co. v. Gen. Accident Ass. Co. of Canada*, 2004 WL 1977220 (N.D. Cal. Sept. 7, 2004), the court upheld jurisdiction over a nonresident *insurer* which issued liability

- 8 -
REPLY IN SUPPORT OF MOTION TO DISMISS

60008871.1

Finally, while the Supreme Court has emphasized that foreseeability alone is an insufficient basis for jurisdiction, S-W's contention that FHSM should reasonably have anticipated being haled before a California forum based solely on the indemnity clause of the FHSM Supply Agreement is belied by the separate insurance terms of the S-W Supply Agreement, pursuant to which FHSM agreed to procure and maintain comprehensive general liability insurance and to name S-W as an additional insured thereunder, including "with a broad form of vendor's endorsement." Kearney Decl., Ex. A, § 15. FHSM not only procured such insurance in favor of S-W, but FHSM's carrier is in fact funding S-W's defense in this action. *See* Rohan Reply Decl., Exs. C and D. Thus, in the event of a defective product claim, such as that alleged here, FHSM reasonably anticipated that its insurance carrier would respond, not that FHSM itself would be subject to jurisdiction in far-flung venues, regardless of its own contacts with the forum, and "without geographic restriction."

### 5. The Controversy Does Not Arise from FHSM's Contacts With the Forum.

Regarding the second prong for specific jurisdiction – that is, "whether plaintiffs' claims would have arisen but for [the defendant's] contacts with California," (*Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001)), it is undisputed that FHSM's only relevant contact with the forum is the mere happenstance the Matson Coatings were shipped to San Diego as a convenience to S-W and in transit to their ultimate destination at the Chinese Shipyard, where the Vessel was

---

policies without geographic restriction to "a company based principally in California" which faced asbestos liability in 100,000 cases, "many of which . . . are being heard in California courts regarding events that took place in California." *Id.* at *1, 3. In *Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474 (9th Cir. 1986), the court upheld jurisdiction over a nonresident *insurer* that issued a group health policy to a multi-state trucking company based in Kansas and covering its employees wherever located. The court found that the defendant had knowingly accepted enrollment in the plan by the plaintiff, a *California* resident, and upheld jurisdiction with respect to the plaintiff's medical claims arising in California. *Id.* at 1479-80. *Am. Induction Techs., Inc. v. KBK, Inc.,* 2012 WL 12888112 (C.D. Cal. April 17, 2012), involved indemnity claims by a *California-based* distributor which had an *ongoing contractual relationship* with a Chinese manufacturer, based on claims of patent infringement arising out of the California distributor's sale of the defendant's products *in California*.

painted.[7] But this fortuitous circumstance in no sense "caused" the alleged defective painting of the Vessel, and the results clearly would have been the same if the Matson Coatings had been shipped FOB FHSM's plant in Tennessee, per the terms of the FHSM Supply Agreement, or shipped directly to China. *See, e.g., Scott v. Breeland*, 792 F.2d 925, 928 (9th Cir. 1986) (in action arising out of alleged assault of flight attendant in Nevada, the fact that the defendants changed planes in California was not a causative factor); *World-Wide Volkswagen,* 444 U.S. at 295 (dismissing as a "fortuitous circumstance" and "isolated event" the fact that the automobile sold by defendants in New York happened to suffer an accident while passing through Oklahoma).

Recognizing a lack of "but for" causation with respect to the painting of the Vessel in China, S-W argues in the alternative that FHSM's alleged refusal to defend and indemnify it in *this action* is a but-for cause of S-W's claims against it. S-W Mem. at 15. But this is a bootstrap argument, premised solely on what FHSM has allegedly *declined to do* in the forum, and cannot be squared with the Supreme Court's recent pronouncements in *Goodyear, Walden* and other recent cases*,* in which the Court has significantly narrowed the scope of specific jurisdiction and repeatedly emphasized that it is the defendant's *own affirmative conduct* "that must form the necessary connection with the forum State." *Walden*, 134 S. Ct. at 1122-23.[8] Indeed, *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244 (9th Cir. 1984), the court cogently explained that an insurer's failure to structure its policy to *exclude* coverage in a given state is not conduct aimed at the forum, since the purposeful availment test "does [not] focus on what the *defendant* has *failed* to do within a state." *Id.* at 1246-47 (emphasis in original). Other Circuit and state supreme courts have likewise assailed the notion that an insurer's failure to exclude coverage in a given state, *or* to

---

[7] FHSM's attendance at the hull survey in Long Beach one month *after* the Vessel was painted in China is obviously not a causative or "but for" factor. In addition, "[o]nly contacts occurring prior to the event causing the litigation may be considered" for specific jurisdiction. *Farmers*, 907 F.2d at 913.

[8] It is also noteworthy that every one of the insurance and indemnity cases cited by S-W was decided *prior* to the Supreme Court's pronouncements in *Goodyear, Walden* and *Bristol-Myers Squibb.*

- 10 -
REPLY IN SUPPORT OF MOTION TO DISMISS

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

60008871.1

defend its insured there, constitutes "purposeful availment." See , i.e., *OMI Holdings Inc. v. Royal Insurance of Canada,* 149 F.3d 1086, 1094 (10th Cir. 1998) ("[W]hether a defendant may foresee that a plaintiff may attempt to implead it into an action in a foreign forum is of little relevance in determining whether a defendant has established minimum contacts with that forum.").

### 6. Exercise of Jurisdiction Would Be Unfair and Unreasonable.

As explained in *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993), the smaller the degree of the defendant's purposeful injection into the forum, the less jurisdiction is to be anticipated and the less reasonable it would be for the forum to exercise jurisdiction. Here, FHSM's injection into the forum is virtually *non-existent*, both with respect to the claims at issue and with respect to sales activity generally. The other reasonableness factors also weigh in FHSM's favor. Regarding the burden of defending S-W's claims here, FHSM (and FHUS as its successor) is a small company with employees and operations on the east coast only. Moreover, FHSM's insurance carrier *is already providing a defense to S-W* in this action. California itself has no interest in adjudicating S-W's indemnity claims, because neither S-W nor FHSM is a California resident and the FHSM Supply Agreement expressly provides that its governed by Ohio law. Kearney Decl., Exh. A, § 11(d). In addition, S-W clearly has alternative forums where it can assert its indemnity claims against FHSM and/or FHUS as its successor.

### 7. The Court Lacks Jurisdiction Over HLUS.

As noted above, S-W suggests that the Court may exercise jurisdiction over HLUS, FHSM's and FHUS' ultimate U.S. parent, based on agency theory, with FHSM's alleged in-state contacts attributed to HLUS. But this contention is meritless, both because FHSM's own forum contacts are insufficient and because the Supreme Court *expressly rejected* the Ninth Circuit's agency theory of jurisdiction in *Daimler AG v. Bauman,* 134 S. Ct. 746, 759-60 (2014).

### B. The Third-Party Complaint Fails to State a Claim Against HLUS.

Finally, regarding dismissal of S-W's claims against HLUS pursuant to Fed. R. Civ. P. 12(b)(6), S-W concedes that the only party with whom it contracted was *FHSM*, but suggests that HLUS may somehow be liable for *FHSM's* alleged indemnity obligations on an "agency theory"

because: (i) the notice provision of the FHSM Supply Agreement included HLUS' Law Department as a notice copy recipient; and (ii) a preprinted footer in certain FHSM emails sent to S-W *after* the execution of the FHSM Supply Agreement "attempted to incorporate" certain additional HLUS terms and conditions.

S-W cites *no authority*, and offers no logic or rationale, for the proposition that the inclusion of an affiliate's law department as a mere *notice copy recipient* in a contract renders that affiliate liable on the contract. It is utterly routine to include a party's outside law firm or, here, a related law department as a notice copy recipient, and this obviously does not render the law firm or affiliate liable on the contract.

S-W's second contention, based on the "attempted" incorporation of certain boilerplate FUJIFILM terms and conditions (the "FUJIFILM TCs," annexed as Ex. E to the Declaration of Brian McDonald) is clearly unavailing because (i) S-W does not allege that these additional terms *were in fact incorporated* into the FHSM Supply Agreement; (ii) the FHSM Supply Agreement itself provides that it may be amended *only by a writing signed by S-W* (Kearney Decl. Ex. A at § 18(a)); and (iii) the FUJIFILM TCs, on their face, *do not even refer to HLUS*, much less include indemnity terms or purport to bind HLUS to its affiliates' indemnity obligations. To the contrary, the opening paragraph of the FUJIFILM TCs expressly states that these supplemental terms are for use "by the FUJIFILM U.S. entity contracting to provide products and/or services ("Vendor") to Customer ("Buyer")."[9]

Finally, if the FUJIFILM TCs *had* been incorporated into the parties' agreement, they would also be dispositive of the FUJIFILM Parties' jurisdictional motion, since the concluding paragraph provides that the buyer (*i.e.*, S-W) "irrevocably and unconditionally" submits to the jurisdiction of the state and federal courts located in Westchester County, New York for the resolution of all disputes.

---

[9] As explained in the Prutting Declaration (¶ 3), HLUS is the holding company for FUJIFILM's U.S. operating companies, does not provide goods or services to the public, and thus is not a "vendor."

60008871.1

## III. **CONCLUSION**

For all the forgoing reasons, Third-Party Defendants respectfully ask the Court to grant this Motion.

Dated: August 14, 2017

POLSINELLI LLP

By: Noel S. Cohen

Attorneys for Third-Party Defendants
FUJIFILM HUNT SMART SURFACES, LLC;
FUJIFILM HUNT CHEMICALS U.S.A., INC.;
FUJIFILM HOLDINGS AMERICA CORPORATION

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

# CERTIFICATE OF SERVICE

I am over the age of 18 and not a party to the within action; I am employed by POLSINELLI LLP in the County of Los Angeles, California at 2049 Century Park East, Suite 2900, Los Angeles, California 90067.

On August 14, 2017, I served the foregoing document(s) described as:

**FUJIFILM HUNT SMART SURFACES, LLC, FUJIFILM HUNT CHEMICALS U.S.A., INC. AND FUJIFILM HOLDINGS AMERICA CORPORATIONS' REPLY BRIEF ISO MOTION TO DISMISS; DECLARATIONS OF NOEL S. COHEN AND PATRICK J. ROHAN IN SUPPORT THEREOF**

on the interested parties in this action by:

[X] **By CM/ECF:** I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants (if any) indicated on the Manual Notice list/Service List.

[X] **(Federal)** I declare under penalty of perjury under the laws of the State of California and under the laws of the United States of America that the above is true and correct.

Executed on August 14, 2017, at Los Angeles, California.

*/s/ Noel Cohen*

Noel Cohen